**Stephen A. GREGORY, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**ADMINISTRATIVE OFFICE OF THE COURTS OF THE STATE OF NEW JERSEY, Defendant.**

**No. CIV. A. 99cv1748.**

United States District Court, D. New Jersey.

Oct. 18, 2001.

---

Richard M. Schall, Schall & Barasch, L.L.C., Moorestown, NJ, for Plaintiff.

John J. Farmer, Jr., Attorney General of New Jersey, Meryl G. Nadler, Deputy Attorney General of New Jersey, Office of the New Jersey Attorney General, R.J. Hughes Justice Complex, Trenton, NJ, for Defendant.

## OPINION

ORLOFSKY, District Judge.

This case presents the Court with novel questions regarding what remedies remain available to private disabled individuals to enforce the provisions of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132 ("ADA")[1], against state governmental agencies. Plaintiff is a hearing-impaired man who seeks relief for what he alleges is discriminatory treatment by the courts of the State of New Jersey. Plaintiff's initial complaint has been buffeted by the Supreme Court's evolving jurisprudence on the issue of when Congress may validly abrogate the States' immunity from suit under the Eleventh Amendment. In its last term, the Supreme Court decided *Board of Trustees v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the most recent in a long line of cases which have substantially expanded the States' immunity from suit brought by individuals. In *Garrett*, the Supreme Court found that Congress's abrogation of the States' Eleventh Amendment[2] immunity from suit by individuals for money damages under Title I of the ADA[3] was unconstitutional. Anticipating that *Garrett's* holding would be extended to Title II of the ADA, Plaintiff seeks to amend his Original Complaint to plead his Title II claims under the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), as well as to plead a separate cause of action under the Reha-

1. Title II of the ADA provides in relevant part:

   [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

   42 U.S.C. § 12132 (2000).

2. The Eleventh Amendment provides:

   The Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

   U.S. CONST. amend. XI.

3. Title I of the ADA provides in relevant part:

   No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

   42 U.S.C. § 12112(a) (2000).

bilitation Act of 1973, 29 U.S.C. § 794(a)[4]. The State of New Jersey asks this Court not only to extend *Garrett's* reasoning to Title II, but also to declare alternative causes of action, expressly mentioned by the Court in *Garrett*, unavailable to disabled individuals under Title II. For the reasons set forth below, I conclude that Plaintiff may amend his complaint to pursue his claims under the doctrine of *Ex parte Young* and Section 508 of the Rehabilitation Act, in accordance with the Supreme Court's decision in *Garrett*.

## I. PROCEDURAL BACKGROUND

Plaintiff, Stephen A. Gregory, filed his Original Complaint on April 16, 1999. The Complaint alleged that the Administrative Office of the Courts of the State of New Jersey had violated Title II of the ADA by failing to provide equal services to enable him and other hearing-impaired individuals to record court proceedings. Gregory's Original Complaint asked this Court to: (1) certify the case as a class action; (2) enter an order "requiring defendants to make available to Plaintiff and all deaf or hard of hearing persons who appear in court a copy of the printed CART record at a cost equal to that charged to those obtaining a copy of an audiotape or videotape of court proceedings"; (3) award damages to Plaintiff and the Plaintiff class for expenses incurred as a result of the alleged discrimination; and (4) award

Plaintiff reasonable attorneys' fees and other reasonable costs. *See* Orig. Compl. at 11.

On October 15, 1999, Defendant, the Administrative Office of the Courts of the State of New Jersey, moved to dismiss, or in the alternative, for summary judgment. Gregory filed a crossmotion for summary judgment. On April 17, 2000, the Supreme Court granted *certiorari* in Board of Trustees of *University of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)[5], to address the constitutionality of Congress's abrogation of the States' Eleventh Amendment immunity from suit under both Titles I and II of the ADA.

On August 8, 2000, the United States Court of Appeals for the Third Circuit filed its decision in *Lavia v. Commonwealth of Pennsylvania*, 224 F.3d 190 (3d Cir.2000). In *Lavia*, the Third Circuit construed the Supreme Court's decision in *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), which had held that Congress had unconstitutionally abrogated the States' Eleventh Amendment immunity from suit under the Age Discrimination in Employment Act, to compel the conclusion that Congress had similarly exceeded its power under Section 5 of the Fourteenth Amendment[6] in enacting Title I of the

---

**4.** The Rehabilitation Act of 1973 provides in relevant part:

No otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...
29 U.S.C. § 794(a)(2000).

**5.** Specifically, the Question Presented on the Petition for Certiorari was: "Do Title I and Title II of the Americans with Disabilities Act

of 1990, 42 U.S.C. §§ 12101 *et seq.*, exceed Congress's enforcement authority under section 5 of the Fourteenth Amendment?" *See* Br. for Petitioners, 2000 WL 821035, at *i.

**6.** The Fourteenth Amendment provides, in relevant part:

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws....

ADA. The Court of Appeals held, therefore, that the States were immune from suits by individuals for money damages under Title I of the ADA.

On August 18, 2000, this Court issued an Order to Show Cause why this case should not be dismissed in light of the Third Circuit's holding in *Lavia*. This Court also certified the fact that the constitutionality of the ADA had been drawn into question to the Attorney General of the United States and extended to the United States Department of Justice the opportunity to intervene, *see* August 18, 2000 Letter to The Honorable Janet Reno, Attorney General of the United States, pursuant to Local Civil Rule 24.1(a) and 28 U.S.C. § 2403(a)[7]. In response to this Court's certification, the Justice Department stated that it was unnecessary for it to participate in this matter because the Supreme Court's decision in *Garrett* would "control the disposition of this case with regard to the question raised in the Court's letter," *see* September 4, 2000 Letter from M. Christine Fotopulos, Esq., Trial Attorney, to The Honorable Stephen M. Orlofsky. On September 11, 2000, this Court administratively terminated this case on the docket without prejudice, pending the outcome of *Garrett*.

On February 21, 2001, the Supreme Court held in *Garrett* that Congress had improperly abrogated the States' immunity from suit under the Eleventh Amendment by individuals for money damages under Title I of the ADA, but did not reach the identical issue under Title II of the ADA. Indeed, the Supreme Court dismissed the grant of *certiorari* on the Title II issue as improvidently granted. *Garrett*, 531 U.S. 356, 121 S.Ct. 955, 960 n. 1, 148 L.Ed.2d 866 (2001).

On March 27, 2001, Gregory filed a motion to reopen this case and a motion for leave to file a first amended complaint, pursuant to Fed.R.Civ.P. 15(a), in order to conform his complaint to the Supreme Court's holding in *Garrett*. Specifically, in his Amended Complaint, Gregory seeks to: (1) name two New Jersey State Administrative Office officials in their official capacities as Defendants; (2) withdraw his request for damages; and (3) plead a cause of action under Section 504 of the Rehabilitation Act of 1974. *See* Amended Compl. at ¶¶ 8, 9, 42. In support of his Motion to Amend, Gregory points to footnote 9 in *Garrett* which states that: "[Title I's] standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*."

The State of New Jersey argues that Gregory's Motion to Amend should be denied because the proposed Amended Complaint is futile, that is, it would not survive a Motion to Dismiss. The State further claims that the action is barred by the Eleventh Amendment and that the doc-

---

The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV, §§ 1, 5.

**7.** 28 U.S.C. § 2403 provides, in relevant part:

In any action, suit, or proceeding in a court of the United States to which the United States or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General,

and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality. 28 U.S.C. § 2403(a)(2000).

trine announced in *Ex parte Young* does not allow Mr. Gregory to plead claims under Title II of the ADA or under the Rehabilitation Act of 1973.

## II. FACTUAL BACKGROUND

Stephen Gregory has chronic hearing loss, and, although he retains some residual hearing, he is considered "functionally deaf," *see* Compl. at ¶ 4, which places him within the ADA's definition of "disabled." *See* 42 U.S.C. § 12102(2).[8]

Gregory's suit arises out of his appearances before the Superior Court of New Jersey to resolve ongoing disputes involving the custody and support of his three children. *See* Compl. at ¶¶ 11, 12. The general practice of the Courts of the State of New Jersey is to audiotape or videotape court proceedings, rather than employ a court reporter. Litigants are given the opportunity to purchase a copy of the audio or videotape for a ten dollar fee. *Id.* at ¶¶ 19, 20. Because of his disability, Mr. Gregory requires "real-time" translations of court proceedings, which are rendered by a court-provided system known as "Computer Aided Realtime Translation" ("CART"). *Id.* at ¶ 14. The CART system works by having a court reporter "translate" spoken words into written form; the words are then scrolled on a screen which can be viewed by the hearing-impaired person. *Id.* at ¶ 17.

Gregory contends that because the CART system scrolls the spoken words and because words are often improperly translated, it is "difficult for the hard-of-hearing or deaf person to be sure that he

or she has properly taken in, or correctly responded to, everything that has been said and processed." *Id.* at ¶ 17. As a result, Gregory has, on several occasions, requested a written print-out of the CART record from the Courts of the State of New Jersey, so that he might review the proceedings afterward to determine the accuracy of his comprehension. *Id.* at ¶ 18. Gregory has offered to pay the same ten dollar fee for this CART print-out as hearing litigants pay for copies of the audio or video tapes of standard court proceedings. *Id.* at ¶ 23.

The Administrative Office of the Courts of the State of New Jersey has responded to Gregory's request by saying that a CART print-out could not be purchased for ten dollars; rather, Gregory would have the choice of purchasing an official transcript at a cost of $1.50 per page, or coming to court to review the computer hard disk in person. *Id.* at ¶¶ 25, 26, 27. Because proceedings which employ a court reporter are not also audio or video taped, it is impossible for Gregory to purchase an audio or video tape in lieu of a CART print-out. *Id.* at ¶ 21.

Gregory contends that the Administrative Office's refusal to provide him with a CART print-out for the same fee that is charged for the video or audio tapes of court proceedings which are made available to hearing litigants is a violation of Title II of the ADA. Regulations promulgated under Title II prohibit public entities from "provid[ing] a qualified individual with a disability with an aid, benefit or service that is not as effective in affording

---

8. 42 U.S.C. § 12102 provides in pertinent part:

The term "disability" means, with respect to an individual—

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102 (2000).

equal opportunity ... to gain the same benefit ... as that provided to others." 28 C.F.R. § 35.130.

## III. DISCUSSION

### A. Motion to Reopen

Mr. Gregory has moved to reopen this case pursuant to this Court's September 11, 2000 Order which administratively terminated this case without prejudice. Defendant does not oppose Mr. Gregory's application to reopen this case, *see* Def.'s April 4, 2001 Letter Br.; therefore, the Court shall grant Plaintiff's Motion to Reopen without further discussion.

### B. Motion for Leave to Amend Complaint

In accordance with footnote 9 of the *Garrett* decision [9], Gregory seeks to amend his complaint in the following ways: (1) to name as Defendants the Administrative Director of the Courts for the State of New Jersey and the Chief of Court Access Services for the Administrative Office of the Courts for the State of New Jersey in their official capacities; (2) to withdraw his request for money damages; and (3) to add a claim under § 504 of the Rehabilitation Act.

The State of New Jersey argues that Gregory's Motion for leave to file an amended complaint should be denied because it cannot withstand a motion to dismiss because: (1) "it is illogical to permit a plaintiff to do an end run around the Eleventh Amendment and pursue an otherwise barred remedy against the state through an action against an individual official of the state"; (2) Gregory cannot establish a prerequisite for the application of the *Ex parte Young* doctrine, *i.e.*, a present violation of federal law; and (3) the claim under the Rehabilitation Act is, under the reasoning in *Garrett*, prohibited by the Eleventh Amendment.

### 1. Legal Standard for Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading by leave of court, and "leave shall be freely given when justice so requires." Local Civil Rule 7.1(e)(2) further requires that a motion seeking leave to amend a complaint contain a copy of the proposed amended complaint.

The decision to allow an amendment is within the discretion of the District Court, but leave to amend should be "freely given" absent "any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment ..." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). An amendment is futile if it would not survive a motion to dismiss. *See Smith v. NCAA,* 139 F.3d 180, 190 (3d Cir.1998), *rev'd on other grounds,* 525 U.S. 459, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999).

---

**9.** Our holding here that Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I does not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young.* In addition, state laws protecting the rights of persons with disabilities in employment and other aspects of life provide independent avenues of redress.

121 S.Ct. 955, 968 n. 9 (internal citation omitted).

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), for "failure to state a claim under which relief can be granted" is governed by the following legal standard: "In considering a motion to dismiss under Rule 12(b)(6), the Court may dismiss a complaint if it appears certain that the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief." *Mruz v. Caring, Inc.*, 39 F.Supp.2d 495, 500 (D.N.J.1999) (Orlofsky, J.) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988)). "While all well pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990)); *see also Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (noting that this procedure "streamlines litigation by dispensing with needless discovery and fact-finding").

In order to determine whether Mr. Gregory's motion to file an amended complaint should be granted, it is first necessary to explore the holding of *Garrett* and the contours of the *Ex parte Young* doctrine. Only then is it possible to determine whether, under *Garrett* and *Young*, Mr. Gregory's claim would be "futile" as the State of New Jersey asserts.

## 2. *Board of Trustees v. Garrett*

The issue before the Supreme Court in *Garrett* was whether state employees may recover money damages by reason of the state's failure to comply with the provisions of Title I of the ADA. The Court concluded that such suits are barred by the Eleventh Amendment under the reasoning of its recent cases addressing the issue, *e.g.*, *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)(Age Discrimination in Employment Act did not validly abrogate states' Eleventh Amendment immunity from suit by private individuals); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)(Fair Labor Standards Act); *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)(Patent and Plant Variety Protection Remedy Clarification Act); *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)(Religious Freedom Restoration Act of 1993); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)(Indian Gaming Regulatory Act).

■ For a congressional abrogation of the States' Eleventh Amendment immunity to be constitutional, two predicates must be met. First, Congress must unequivocally intend to abrogate the immunity. Second, Congress must act pursuant to a valid grant of constitutional authority. *See Garrett*, 121 S.Ct. at 962 (quoting *Kimel*, 528 U.S. at 73, 120 S.Ct. 631). The first requirement was not at issue in *Garrett*, because the ADA makes clear the intent of Congress to abrogate the States' immunity from suit. 42 U.S.C. § 12202 (2000).

■ Because Congress may not base its abrogation of Eleventh Amendment immunity on Article I, *see id.*; *Kimel*, 528 U.S. at 79, 120 S.Ct. 631; *Seminole Tribe*, 517 U.S. at 72–73, 116 S.Ct. 1114, its authority must rest on the enforcement power of Section 5 of the Fourteenth Amend-

ment. Legislation enacted pursuant to Section 5 must be congruent and proportional to the injury to be prevented or remedied. To determine congruence and proportionality, a Court must identify the constitutional right at issue, determine if Congress identified a history and pattern of unconstitutional behavior in violation of that right, and determine if the legislative requirements are proportional to the constitutional injury identified. *Garrett*, 121 S.Ct. at 964–67.

In *Garrett*, the Supreme Court concluded that because the disabled are not a suspect class, any constitutional harm to them is entitled to only rational basis review. *Id.* at 963. It further found that, in enacting Title I of the ADA, Congress had failed to show a pattern of irrational state discrimination in employment against the disabled. *Id.* at 965. Finally, the Court found that Title I's duty to accommodate the disabled "far exceeds what is constitutionally required in that it makes unlawful a range of alternative responses that would be reasonable but would fall short of imposing an 'undue burden' upon the employer." *Id.* at 967. Thus, the Court concluded that Title I of the ADA was an unconstitutional abrogation of the States' Eleventh Amendment immunity from suit by private citizens for money damages. *Id.* at 967–68. The Court stressed in footnote 9, however, that "Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*." *Id.* at 968, n. 9.

### 3. The *Ex parte Young* Doctrine

■ *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), held that the Eleventh Amendment did not preclude suits against state officers, in their official capacities, to enjoin violations of federal law, even when the remedy will, in fact, enjoin the implementation of an official state policy. The Court defended this "end run" around the Eleventh Amendment in the following manner:

The act to be enforced is alleged to be unconstitutional, and if it be so, the use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting to use the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714.

The Supreme Court has extended this holding to violations of federal statutes as well as of the United States Constitution. *See Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). The *Ex parte Young* doctrine has been called an "obvious fiction," *see Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 117 S.Ct. 2028, 2034, 138 L.Ed.2d 438 (1997), because when a state officer is sued to enjoin the enforcement of an official state policy, the real party in interest is the state; thus, the end result is the same as if the state had

been sued directly, the Eleventh Amendment, notwithstanding. *See* Erwin Chemerinsky, Federal Jurisdiction § 6.5 (3d ed.1999). Despite this fictive quality, the viability of employing the *Ex parte Young* doctrine to provide relief against state violations of the Constitution and federal laws, has been consistently upheld by the Supreme Court, *see e.g., Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Home Telephone & Telegraph v. Los Angeles*, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510 (1913); *see also*, 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3524, at 154 (1984)("To be sure the doctrine of *Ex parte Young* has a fictive quality to it; nonetheless, it serves as an effective mechanism for providing relief against unconstitutional conduct by state officers and for testing, in federal courts, the constitutionality of the state statutes under which they act").

To plead a cause of action under *Ex parte Young*, a plaintiff must establish a present violation of federal law. *B.H. Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)(*Ex parte Young* applies to those cases in which a violation of federal law is ongoing, not to those in which federal law was violated in the past); *Milliken v. Bradley*, 433 U.S. 267, 289–90, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)(*Ex parte Young* applied to defendants perpetuating a system of *de jure* segregation at the time the suit was filed). Furthermore, only prospective injunctive relief is available under *Ex parte Young*. *See Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Milliken v. Bradley*, 433 U.S. at 289, 97 S.Ct. 2749; *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

**4. Plaintiff's Motion to Name Two State Officials as Defendants and Relinquish His Claim for Money Damages**

■ In order to utilize the *Ex parte Young* doctrine, Mr. Gregory seeks to amend his complaint to name as Defendants the Administrative Director of the Courts for the State of New Jersey and the Chief of the Court Access Services in their official capacities and to abandon his claim for monetary damages. *See* Amended Compl. at ¶¶ 8, 9. The State of New Jersey argues that this amendment will be futile because it is "it is illogical to permit a plaintiff to do an end run around the Eleventh Amendment and pursue an otherwise barred remedy against the state through an action against an individual official of the state." · The State's contention directly contradicts footnote 9 in *Garrett*, as well as the purpose behind the *Ex parte Young* doctrine.

As noted above, in *Garrett*, the Supreme Court expressly stated that its decision that Congress had unconstitutionally abrogated the States' Eleventh Amendment immunity from suits by individuals for money damages under Title I of the ADA,

[did] not mean that persons with disabilities have no federal recourse against discrimination. Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex parte Young*.

*Garrett*, 121 S.Ct. at 968, n. 9.

The State of New Jersey argues that footnote 9 is inapplicable to Title II of the ADA because Title II applies to public entities and because it is "well established that individuals can not be liable for Title II violations." For this proposition, the

State cites to *Doe v. DYFS*, 148 F.Supp.2d 462 (D.N.J.2001), *Moyer v. Conti*, 2000 WL 1478791 (E.D.Pa. Oct.5, 2000), this Court's opinion in *Calloway v. Boro of Glassboro Dept. of Police*, 89 F.Supp.2d 543 (D.N.J. 2000), and the Seventh Circuit's opinion in *Walker v. Snyder*, 213 F.3d 344 (7th Cir. 2000). The State's argument is unavailing because *Calloway* and *Doe* do not stand for the proposition that the State asserts. Moreover, *Walker* is not controlling authority in this Circuit, and *Moyer* was decided before the Supreme Court held that *Ex parte Young* was available to individuals suing a State for violations of Title I.

In *Calloway*, the plaintiff had sued police officers *in their individual capacities* for violations of Title II and the Rehabilitation Act. Thus, while this Court held in *Calloway* that individuals may not be liable for violations of Title II and the Rehabilitation Act, it did not hold that individuals sued *in their official capacities* were likewise protected from suit. In *Doe*, the Court denied Plaintiffs' motion to amend their complaint to utilize the *Ex parte Young* doctrine because of their lack of standing, *see Doe*, 148 F.Supp.2d at 478–79; the Court's discussion of Plaintiffs' Title II cause of action in *Doe* does not discuss the availability of the *Ex parte Young* doctrine, *id.* at 489. Finally, while *Walker* did hold that "[a] suit resting on the *Young* approach is not a suit against the public body and therefore cannot support relief," a decision by the Seventh Circuit, while entitled to deference, is not binding authority in this Court. Furthermore, *Walker* was decided before the Supreme Court held in *Garrett* that *Ex parte Young* was available to individual plaintiffs.

In *Moyer*, plaintiff who was a quadriplegic, filed suit against Pennsylvania Senator Conti and the Pennsylvania State Senate under Title II of the ADA for the lack of wheelchair accessible building entrances and disability parking. Mr. Moyer later sought to amend his original complaint in order to name the Chief Clerk of the Pennsylvania Senate in his official capacity as a defendant and to relinquish his claim for damages so as to utilize the *Ex parte Young* doctrine. The Honorable Berle M. Schiller concluded that "[b]ecause, as discussed above, Title II of the ADA is not enforceable against the state through the Senate, [the state official] could not have violated any federal law if in fact he failed to require ADA compliance." 2000 WL 1478791, at *7. Thus, the Court granted Defendant's Motion for Summary Judgment.

It is important to note that *Moyer* was decided before the Supreme Court's decision in *Garrett* expressly allowed suits by individuals under Title I of the ADA to proceed under the *Ex parte Young* doctrine. It appears to this Court that Judge Schiller's reasoning was predicated on his conclusion that "the Supreme Court's reasoning in *Kimel* as well as the Third Circuit's reasoning in *Lavia* applies equally to Title II of the ADA and … that [therefore] Congress did not validly pierce the shield of immunity provided to the States through the Eleventh Amendment." *Moyer*, 2000 WL 1478791, at *6. Thus, because Judge Schiller concluded that in enacting Title II of the ADA, Congress had unconstitutionally abrogated the States' Eleventh Amendment immunity, there was no valid federal statute for the state official to violate. As a result, it was impossible to sue that official under the *Ex parte Young* doctrine. However, *Garrett* expressly holds out the possibility of suing state officials under *Ex parte Young* for violations of Title I, even though the Court found that Congress's abrogation of the States' Eleventh Amendment immunity in Title I was unconstitutional. It should

therefore, be equally possible to sue state officials under the *Ex parte Young* doctrine for violations of Title II, even if the Court should likewise find that Congress's abrogation of the States' immunity under Title II is unconstitutional.

In addition, it is noteworthy that the Supreme Court did not address Title II in *Garrett, see* 121 S.Ct. at 960, n. 1, nor is it a foregone conclusion that Title II of the ADA will suffer the same fate as Title I did in *Garrett, see id.* at 966, n. 7 (suggesting that the congressional findings of historic discrimination by the States against the disabled in the provision of public services and public accommodations, areas addressed by Titles II and III are more compelling than those for employment discrimination addressed by Title I).

In short, the case law demonstrates that the State of New Jersey is mistaken in contending that *Ex parte Young* is unavailable to Gregory because, in reality, he seeks to compel the State, not the individual defendants, to comply with Title II. This argument fails to recognize that this "way around the Eleventh Amendment" [10] is exactly what the *Ex parte Young* doctrine allows.

■ The State's second argument is that Mr. Gregory cannot establish a necessary predicate for the *Ex parte Young* doctrine, *i.e.,* an ongoing violation of federal law, because the State of New Jersey provides the hearing disabled with CART translations. This contention has more merit, but ultimately fails to persuade this Court that Mr. Gregory's Amended Complaint would not withstand a motion to dismiss.

Title II provides that "no qualified individual with a disability shall, on the basis of disability, be excluded from partic-

ipation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130(a). Public entities are prohibited from "provid[ing] a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others," 28 C.F.R. § 35.130(b)(iii), or from "provid[ing] different or separate aids, benefits, or services to individuals with disabilities . . . than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others," 28 C.F.R. § 35.130(b)(iv). Title II does not require a public entity to provide "personal devices," such as wheelchairs, hearing aids, or "readers for personal use or study" to disabled individuals. 28 C.F.R. § 35.135.

Regarding communication with the disabled, public entities are required to "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefit of, a service, program, or activity conducted by a public entity." 28 C.F.R. § 35 .160(b)(1). Public entities are to give "primary consideration" to the disabled individual's requests in determining what auxiliary aid or service is necessary. 28 C.F.R. § 35.160(b)(2). This directive is included because of the wide variety of disabilities and situations requiring auxiliary aids and services for the disabled. App. A, 28 C.F.R. § 35.160 (explaining that in some situations where the information being communicated is complex or is exchanged for a lengthy period of

---

**10.** *See* Chemerinsky, Federal Jurisdiction, at § 7.5: Ways Around the Eleventh Amendment: Suits Against State Officers (3d ed.1999).

time, a qualified interpreter rather than less complicated and expensive aids may be required).

These directives do not require the entity to "take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens," but the entity has the burden of showing such fundamental alteration or undue burden. 28 C.F.R. § 35.164.

This Court agrees with the Administrative Office of the Courts of the State of New Jersey that in providing Mr. Gregory with CART translations, it has provided him with an auxiliary aid as directed by Title II, indeed, an aid which is specifically mentioned in the regulations. *See* App. A to 28 C.F.R. § 35.160 ("For instance, some courtrooms are now equipped for 'computer-assisted transcripts,' which allow virtually instantaneous transcripts of courtroom argument and testimony to appear on displays"). However, Title II expressly states that public entities should give deference to the disabled person's choice of aid, and acknowledges that especially complex and lengthy communications may require different, more involved and perhaps more expensive accommodations. Therefore, I cannot conclude, when construing the proposed amendment and all reasonable inferences in Mr. Gregory's favor, that he can prove no set of facts which would entitle him to relief. It is conceivable that a jury could conclude that the provision of a CART system alone, rather than providing a written CART print-out, in these circumstances, to Gregory, does not constitute a benefit that is "as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." ·

Nor has the State demonstrated that there is no question of fact concerning whether supplying a CART print-out to Mr. Gregory and other hearing-impaired individuals would "fundamentally alter" the service which Defendant provides or result in "undue financial or administrative burdens."

Accordingly, I conclude that Mr. Gregory's motion to amend his complaint to include those elements necessary to proceed under the *Ex parte Young* doctrine can withstand a motion to dismiss and, therefore, is thus not "futile" under Fed. R.Civ.P. 15(a).

**5. Plaintiff's Motion to Amend the Complaint to Include a Claim Under the Rehabilitation Act**

■ Mr. Gregory also seeks to amend his complaint to plead a cause of action under § 504 the Rehabilitation Act of 1973, which provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 702(20)[sic] of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794(a).

To state a claim under § 504, a plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds; and (3) he was discriminated against based on his disability. *See id.; Calloway*, 89 F.Supp.2d at 551. The Rehabilitation Act is applicable to State governments. 29 U.S.C. §§ 794(b)(1)(A)(B). The Rehabilitation Act was the predecessor to Title II of the Americans with Disabilities Act, *see Easley v. Snider*, 36 F.3d 297, 301 (3d Cir.1994), the statutory language of each and the regulations promul-

gated under each are congruous, and the law developed under the Rehabilitation Act is applicable to Title II of the Disability Act. *Calloway,* 89 F.Supp.2d at 551; *Easley,* 36 F.3d at 300–05.

The State does not argue that Mr. Gregory failed to make out a prima facie case of discrimination under the Rehabilitation Act. The State argues instead that because the Rehabilitation Act is the precursor to Title II of the ADA and imposes similar duties on public entities, its abrogation of the States' Eleventh Amendment immunity from suit must be unconstitutional under *Garrett* and *Lavia*[11].

While suits by individuals against public entities for money damages under the Rehabilitation Act may be precluded by *Garrett, see Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* — F.3d ——, 2001 WL 1159970, at *10 (2d Cir.2001) I cannot agree that the language in footnote 9 of *Garrett* that the *Ex parte Young* doctrine is available to individuals to enforce the requirements of the ADA should not likewise be applicable to § 504 of the Rehabilitation Act. Therefore, for the reasons discussed in Part 4 above, I find that Mr. Gregory's Motion to Amend his complaint to include a claim under the Rehabilitation Act of 1973 would survive a motion to dismiss, and therefore should be granted.

## IV. CONCLUSION

For the reasons set forth above, I shall grant Plaintiff's Motions to Reopen this case and for Leave to Amend his Original Complaint. The Court will enter an appropriate form of order.

---

**11.** It may in other circumstances be important to note that § 504, unlike Title II, was enacted pursuant to Congress's authority under the Spending Clause of Article I. *See* U.S. Const. art I, § 8, cl. 1; *see also Garcia,* —— F.3d at ——, 2001 WL 1159970, at *10.

Thus, it would be possible to interpret a States' acceptance of federal funds under § 504 of the Rehabilitation Act as a waiver of sovereign immunity. *See Garcia,* at —— —— ——, at *10–11.