**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 31 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

GILBERT ROMERO,

        Plaintiff - Appellant,

v.

CITY AND COUNTY OF DENVER
DEPARTMENT OF SOCIAL
SERVICES,

        Defendant - Appellee.

No. 01-1488

(D. Colorado)

(D.C. No. 99-B-1095)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **ANDERSON** , and **LUCERO** , Circuit Judges.

Plaintiff-appellant Gilbert Romero sued his former employer, the City and

County of Denver Department of Social Services (DSS), alleging that DSS had

discriminated and retaliated against him in violation of the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq* . (ADA), and that he was

subjected to a hostile work environment and to sex discrimination and retaliation

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. (Title VII).[1] The district court granted summary judgment to DSS on all claims, and Mr. Romero appeals.

Before hearing oral argument in this case, we ordered supplemental briefing on the issues of whether, in the district court, Mr. Romero waived the matter of amendment of his complaint in light of <u>Board of Trustees v. Garrett</u>, 531 U.S. 356 (2001), and whether Mr. Romero made a sufficient showing of a hostile work environment and/or retaliation to survive a motion for summary judgment. After reviewing de novo the arguments of the parties, the record on appeal, and the relevant law, we affirm.

The facts of this case are well-known to the parties and will be repeated here only as necessary for our analysis. Plaintiff was employed as a general management assistant III and was supervised by various women. His complaint alleged that he was subjected to a sexually hostile work environment as evidenced by belligerent comments from a co-worker, a threatening banner taped across his office door, and handouts that ridiculed and demeaned men. Mr. Romero alleged that, when he attempted to file a grievance against the co-worker, he was initially rebuffed by his supervisor. Mr. Romero later filed a timely grievance, but the

---

[1]Mr. Romero also brought other claims which are not the subject of this appeal.

grievance was allegedly dismissed and was "superceded by [DSS's] efforts to disqualify or terminate him for other reasons." Aplt's Opening Br. at 6. Mr. Romero was eventually disqualified from working at DSS after unexplained fainting episodes resulted in medical restrictions that prevented him from working.

## ADA Discrimination Claim

In January 2001, the district court granted summary judgment to DSS on Mr. Romero's Title VII sexual harassment and sex discrimination claims and on his Title VII and ADA retaliation claims but refused to grant summary judgment on the ADA discrimination claim. The court later ordered the case administratively closed pending the Supreme Court's decision in Garrett, 531 U.S. 356.

Upon the decision in Garrett, the court granted DSS's motion to reactivate the case and its motion for summary judgment on the ADA discrimination claim. We review the grant of summary judgment de novo under the familiar standard:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,
165 F.3d 1321, 1326 (10th Cir. 1999).

In Garrett, the Court held that states enjoy Eleventh Amendment immunity against suits for money damages brought by state employees for violation of the ADA. Garrett, 531 U.S. at 360. The protection of the Eleventh Amendment extends to entities considered arms of the state. Unified Sch. Dist. No. 480 v. Epperson, 583 F.2d 1118, 1121 (10th Cir. 1978). "In Colorado, municipal departments of social services are in reality arms of the state and therefore immune from suit in federal court." Cobb v. City & County of Denver, 761 F. Supp. 105, 106 (D. Colo. 1991). Garrett thus makes it clear that Mr. Romero's suit for money damages against DSS cannot be maintained.

The Court in Garrett, however, noted that "Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under Ex parte Young, 209 U.S. 123 [] (1908)." Garrett, 531 U.S. at 374 n.9. The district court, analyzing circuit precedent and Mr. Romero's complaint and pre-trial order, concluded that Mr. Romero had given no indication that he was entitled to prospective injunctive relief for violations of the ADA. See Calderon v. Kan. Dep't of Social & Rehab. Servs, 181 F.3d 1180, 1183 (10th Cir. 1999) (holding threshold question to be whether

-4-

complaint gave any indication that the plaintiff might be entitled to injunctive relief). It therefore granted DSS's motion for summary judgment on the ADA discrimination claim.

In opposing this result and citing Frazier v. Simmons, 254 F.3d 1247 (10th Cir. 2001), Mr. Romero argues that his action can fairly be characterized as one for prospective injunctive relief and should not have been dismissed. We find Frazier distinguishable from this case. In Frazier, the complaint asked for "just and equitable relief," and the pretrial order listed "the nature and extent of any equitable relief" as an issue of law. See id. at 1255. Mr. Romero's complaint, however, does not even mention the word "equitable" in the relief requested on the ADA claims, and the pretrial order mentions the ADA claims but does not request any specific relief for the alleged violations. Under these circumstances, we agree with the district court that Mr. Romero failed to give any indication that he was entitled to injunctive relief.

Even if, however, we were to agree with Mr. Romero's interpretation of his claim, we would still hold his claim barred. "Under the Ex parte Young legal fiction, when an official of a state agency is sued in his official capacity for prospective equitable relief, he is generally not regarded as 'the state' for purposes of the Eleventh Amendment and the case may proceed in federal court." ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1188 (10th Cir. 1998). The Ex

parte Young exception, however, is a narrow one. Elephant Butte Irrigation Dist. v. Dep't of Interior, 160 F.3d 602, 607 (10th Cir. 1998). "[I]t 'has no application against the States *and their agencies,* which are [immune from suit] regardless of the relief sought.'" Buchwald v. Univ. of N.M. Sch. of Med., 159 F.3d 487, 495 (10th Cir. 1998) (emphasis added) (quoting P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993)); see also Elephant Butte, 160 F.3d at 607 (Ex parte Young doctrine applies only when "lawsuit involves an action against state officials, not against the state"); ANR Pipeline, 150 F.3d at 1187 (any form of relief against state agency, even solely prospective injunctive relief, is barred).

Mr. Romero has sued only the state agency with whom he was employed. Again in contrast to the plaintiff in Frazier, he did not name any state official in any capacity. Accordingly, he may not proceed under the Ex parte Young doctrine, even assuming that the equitable relief he now seeks would otherwise be available. Thompson v. Colorado, 278 F.3d 1020, 1025 n.2 (10th Cir. 2001), cert. denied, 122 S. Ct. 1960 (2002).

Mr. Romero urges this court to allow him to amend his complaint. We have recognized the possibility that, if so inclined, this court would have the power to grant such a request. Thompson v. Colorado, 278 F.3d 1020, 1025 n.2 (10th Cir. 2001), cert. denied, 122 S. Ct. 1960 (2002). We note, however, that

Mr. Romero presumably could have requested leave to amend his complaint in the district court and apparently did not avail himself of that opportunity. We reject Mr. Romero's contention that mentioning the possibility of amendment in a footnote in his response to defendant's motion for summary judgment was tantamount to a formal motion to amend. The failure to file a proper motion to amend distinguishes Mr. Romero's case from Gregory v. Administrative Office of the Courts, 168 F. Supp. 2d 319 (D.N.J. 2001), cited in plaintiff's supplemental brief. Under these circumstances, we will not accede to Mr. Romero's request to amend or remand for this purpose. See Thompson, 278 F.3d at 1025 n.2. (denying plaintiffs' motion to amend complaint to add an individual defendant where plaintiffs "identified no . . . equitable consideration justifying their eleventh-hour request"). Because in this circuit, a defendant's Eleventh Amendment immunity deprives the district court of jurisdiction, id. at 1023, Mr. Romero's ADA claim was properly dismissed.

## Hostile Work Environment Claim

The district court granted summary judgment on Mr. Romero's hostile work environment claim, holding, as a matter of law, that the conduct was insufficiently severe or pervasive to create an abusive environment under Title VII. After reviewing the record, we agree.

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986). Congress intended Title VII "to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quotations omitted). In order to be actionable, the sexual harassment must be so severe or pervasive that it alters the conditions of the job and results in an "abusive working environment." Meritor, 477 U.S. at 67. In order to prevail, Mr. Romero must show that the harassment was pervasive or both objectively and subjectively offensive. See Smith v. Northwest Fin. Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997). He must also show that the harassment was gender-based or stemmed from anti-male bias. See Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994) (applying standard in racial discrimination case). All of the circumstances must be examined before a court can conclude that the environment is one that a reasonable person would find abusive or hostile. Harris, 510 U.S. at 21, 23.

Mr. Romero contends that he has raised genuine issues of material fact regarding a hostile work environment by identifying the following acts or conduct. On one of his first days at DSS, Mr. Romero encountered Ms. Gerri

Domingo, a co-worker from a different department, who stated, "I'm the biggest bitch that you will ever meet in your life and at Social Services, and I'll decide if I'm going to like you or not, and if I decide that I don't, I'll make sure that you're out of here." Aplt.'s App. at 228. A banner was taped across Mr. Romero's office door reading, "Beware witches work here—do not cross them." Id. at 232. Printed "jokes" were left on Mr. Romero's desk, including a list of "dumb men jokes," a cartoon referencing a dog named Lucky who had been castrated, and a cartoon depicting a bearing ball, followed by a ball bearing, and ending with a drawing of two bears copulating with the subtitle "bear balling." Also included in the record is a list of crude phrases "cleaned up" to be less offensive and a narrative about winters in Utah. Mr. Romero found the items offensive and testified that "it made it harder to work in a hostile environment." Id. at 120.

The district court found that the acts complained of were insufficiently severe or pervasive to create an abusive environment under Title VII. It further found the jokes, while personally offensive to Mr. Romero, were not objectively offensive. Noting that most of the conduct Mr. Romero complained of was not of a sexual nature, the court concluded that Ms. Domingo's conduct was not motivated by anti-male bias.

We agree with the district court that Mr. Romero has failed to raise a genuine issue of material fact concerning the existence of a hostile work

-9-

environment. The references to witches and to being a "bitch," are not objectively anti-male; indeed, such epithets are typically perceived to be anti-female. The dumb men jokes and the reference to Lucky the Dog do not constitute the "steady barrage of opprobrious [anti-male] comments" which would raise the specter of a hostile environment.     See Bolden , 43 F.3d at 551. The other incidents Mr. Romero complains of did not have any particular gender-based connotation at all. Nor has Mr. Romero demonstrated that gender-based negative statements and conduct were sufficiently pervasive to constitute an abusive workplace. The district court correctly granted summary judgment to DSS on the hostile work environment claim.

## Title VII Discrimination

Mr. Romero argues that the district court erred in granting summary judgment on this claim because his work environment was dominated by women and he had shown his termination to be pretextual. We disagree.

In Notari v. Denver Water Department    , 971 F.2d 585, 589 (10th Cir. 1992), this court held that

> a Title VII disparate treatment plaintiff who pursues a reverse
> discrimination claim, and seeks to obtain the benefit of the
> McDonnell Douglas [Corp. v. Green    , 411 U.S. 792 (1973)]
> presumption, must, in lieu of showing that he belongs to a protected
> group, establish background circumstances that support an inference

that the defendant is one of those unusual employers who discriminates against the majority.

Apparently in an attempt to meet this requirement, Mr. Romero states that his office was dominated by women, all of his supervisors were women, and the harassment was tolerated by the women because they were all friends. [2]

After reviewing the record, we agree with the district court that Mr. Romero has failed to state a prima facie case of gender discrimination. Specifically, he has not shown that DSS was the unusual employer who discriminated against males. Two males participated in the decision to disqualify him from employment, and Mr. Romero points to no evidence that other males were discriminated against by DSS. Alternatively, he has not provided direct evidence of discrimination or indirect evidence that, but for his gender, he would not have been disqualified. See Notari, 971 F.2d at 590.

_____

[2]Mr. Romero must make the Notari showing only if he wishes to take advantage of the McDonnell Douglas presumption available to plaintiffs who make a prima facie case under McDonnell Douglas. If Mr. Romero is not proceeding under McDonnell Douglas, he is free to make out his prima facie case by presenting "direct evidence of discrimination, or indirect evidence sufficient to support a reasonable probability, that but for [his] status the challenged employment decision would have favored [him]." Notari v. Denver Water Dep't, 971 F.2d 585, 589 (10th Cir. 1992).

The district court apparently assumed that Mr. Romero wished to proceed under McDonnell Douglas, although he did not take that stance in his brief in opposition to defendant's motion for partial summary judgment. Indeed, Mr. Romero's brief in the district court did not even discuss the Title VII gender discrimination claim as a separate claim.

-11-

## Title VII Retaliation Claim

In order to state his prima facie case of Title VII retaliation, Mr. Romero must prove:

(1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action.

Sauers v. Salt Lake County, 1 F.3d 1122, 1128 (10th Cir. 1993). The district court found that when Mr. Romero complained to his supervisors and filed a complaint against Ms. Domingo, he engaged in protected activity. It further found that when Mr. Romero lost supervisory responsibilities he suffered an adverse employment action. The district court finally concluded, however, that Mr. Romero had failed to provide any evidence that he had lost supervisory responsibilities, was denied a promotion, and was eventually terminated because of his complaints to his supervisors. Mr. Romero's sole argument regarding his retaliation claim is that his *termination* was linked to the protected activity of complaining about the perceived gender-based harassment.

As the district court correctly observed, Mr. Romero's statement that the hearing to gather information relevant to his possible disqualification was a "set up" was insufficient to meet his burden on summary judgment to show a causal link between his protected activity and his termination. Further, while a temporal link between protected activity and termination can be evidence of retaliation, the

five months here, by itself, is insufficient to make out a prima facie case of retaliation.   See Richmond v. ONEOK, Inc.  , 120 F.3d 205, 209 (10th Cir. 1997).

In his opening brief, Mr. Romero implies that his supervisor, Ms. Miles, told him he would be fired for filing his grievance.  He offers this as evidence that his *termination* was retaliatory.  Mr. Romero cites to the record out of context.

The evidence was that Ms. Miles' comment was made in relation to a performance evaluation, not to Mr. Romero's ultimate termination.  Mr. Romero testified in deposition that "after I walked out of my annual evaluation and walked back to the office with Ms. Judy Miles . . . she said, 'I hope you don't hold that evaluation against me, but I told you, when you filed against Gerri, you were going to pay for it.'"  Aplt's App. at 240 (Romero dep. 71:19-25).  The second record cite also refers to Mr. Romero's sub-standard evaluation, not to his termination:

> I had just gotten reamed by Ms. Sparrow and Ms. Miles on my annual appraisal.  I mean, they tore me to pieces.  And then I walked right back to the office with Judy, and she said, "See.  See what happens when you go against a woman here?  I told you not to file against Gerri."

Id. at 241 (Romero dep. 73:3-6).

Although Mr. Romero's second performance evaluation was lower than his first, the evaluations were done by two different teams of supervisors, both scores

-13-

placed Mr. Romero in the "Meets Expectations" category, and neither score went into Mr. Romero's permanent personnel file. The district court thus found that the lower performance evaluation was not an adverse employment action because it did not result in a significant change in Mr. Romero's employment status. Mr. Romero does not dispute this point. While Mr. Romero's brief seems to offer direct proof of retaliation, such contention is unsupported by the evidence.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge